**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**MAGNOLIA HEALTHCARE, INC. and**
**FOUNDATION HEALTH SERVICES, INC., PLAINTIFFS,**

**VS. CIVIL ACTION NO. 4:04CV370-P-B**

**THE HARTFORD FINANCIAL SERVICES GROUP, INC.; HARTFORD UNDERWRITERS INSURANCE COMPANY; AND JOHN DOES 1-25, DEFENDANTS.**

**ORDER**

These matters come before the court upon Defendants' Motion for Declaratory Judgment and for Partial Summary Judgment on Choice of Law [49-1] and Plaintiffs' Motion for Partial Summary Judgment as to Choice of Law [55-1]. After due consideration of the motions and the responses filed thereto, the court finds as follows, to-wit:

The primary question at bar is whether Louisiana law or Mississippi law controls the question of whether the Hartford insurance defendants owe the plaintiff insureds the duty to provide independent counsel in the fourteen underlying lawsuits filed against the plaintiffs in Mississippi.[1]

The Mississippi Supreme Court in *Moeller v. American Guarantee and Liability Insurance Company*, 707 So.2d 1062 (Miss.1998) held that since a conflict of interest for involved attorneys occurs when an insurer agrees to defend an insured under a reservation of rights, the insurer must provide independent legal counsel to the insureds. The Louisiana courts have not made such a ruling. Simply stated, if Louisiana law applies then the Hartford defendants do not appear to owe such a

[1] Because the basic facts in this case are undisputed and the instant motions involve questions of law, the court declines to reiterate the facts in detail.

duty; whereas, if Mississippi law applies, then they do.

Since this case was brought in Mississippi, resolution of the question requires a review of Mississippi's rules regarding conflict of laws .

"[W]hen deciding conflict of law questions, Mississippi has ascribed to the most significant relationship test embodied in the Restatement (Second) of Conflicts of Law." *Powe v. Roy Anderson Const. Co., Inc.*, 910 So.2d 1197, 1201 (Miss. 2005). "[T]he 'significant relationship' test is also often referred to as the 'center of gravity' analysis. The 'center of gravity' test focuses on the contacts between the parties and the forum." *Id*. (citations omitted). Stated differently:

> This [center of gravity] doctrine is a rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation.

*Zurich American Ins. Co. v. Goodwin*, 920 So.2d 427, 433 (Miss. 2006) (citing *Mitchell v. Craft*, 211 So.2d. 509, 510 (Miss. 1968)).

With regard to Section 6 of the Restatement (Second) of Conflict of Laws, which sets the basic policies underlying choice of law questions, the Mississippi Supreme Court has set out the following factors to be considered: "(1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relevant interest of those states in the determination of a particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of results; (7) ease and determination in application of law to be applied." *Powe*, 910 So.2d at 1202.

Section 188 of the Restatement (Second) of Conflict of Laws sets forth principles to be applied in making choice of law determinations in contract actions generally. *Boardman v. United Services Automobile Association*, 47 So.2d 1024, 1032 (Miss. 1985). Section 188 provides in pertinent part:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187) the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id*.

Another relevant provision in the Restatement is Section 193 regarding contracts of fire, surety, or casualty insurance. Section 193 provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant

> relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

The Hartford defendants argue that Section 193 is inapplicable since the subject policy insured properties in multiple states, therefore showing an absence of a "principal" location. In support of this argument, they cite to Comment b to Section 193 which states in pertinent part:

> The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. *Situations where this cannot be done, and where the location of the risk has less significance, include* (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) *where the policy covers a group of risks that are scattered throughout two or more states.*

(as emphasized by the Hartford defendants). While conceding that the first exception does not apply, the Hartford defendants maintain that the second exception applies because the subject policies covered risks in six states other than those in Mississippi.

The plaintiffs counter that Section 193 does indeed apply given that Magnolia Health Care Inc., whose sole member is Foundation, was specifically insured for its nursing homes which are only located in Mississippi. It is undisputed that Magnolia was a named insured for its four nursing homes in Mississippi. The plaintiffs also point to Comment c to Section 193 which states in pertinent part:

> A number of reasons serve to explain why such importance is attached to the principal location of the insured risk. This location has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend. *So the cost of automobile liability or of collision insurance will probably be higher if the place where the automobile will be principally garaged during the term of the policy is an urban, as opposed to a rural, community. Similarly, the cost of fire insurance will depend in part upon the place where the insured thing is located.* For these and other reasons, the location of the

> risk is a matter of intense concern to the parties to the insurance contract. *And it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the risk is to be principally located would be applied to determine many of the issues arising under the contract. Likewise, the state where the insured risk will be principally located during the term of the policy has a natural interest in the determination of issues arising under the insurance contract.*

(as emphasized by the plaintiffs). The plaintiffs contend that this comment is important because the parties in this suit contemplated that the risk with regard to Magnolia would be principally located in Mississippi, especially given that the policies set out the location of the Magnolia homes by their Mississippi addresses. It is also undisputed that the corporate designee for the Hartford defendants, Warren Friedman, conceded that Hartford took into account the location of the Magnolia nursing homes when calculating the premiums. Friedman Dep. at 113-14.

The plaintiffs assert that Hartford's reliance on Comment b to Section 193 is misplaced because that provision is concerned with situations in which the parties cannot anticipate where the loss will occur while the subject Magnolia nursing homes (suits against which brought about the present controversy) were only located in Mississippi.

Because neither of the parties have cited binding authorities on either side of the issue, the court concludes that, after considering the arguments presented, Section 193 does apply to the instant action since (1) Magnolia, a Mississippi corporation, was a named insured in the policies; (2) Magnolia only operates nursing homes in Mississippi; (3) all four of Magnolia's Mississippi nursing home addresses were listed in the policy (4) the premiums were calculated in part by considering the location of the Magnolia nursing homes, all of which are located in Mississippi; (5) the parties clearly contemplated that the risk involving the Magnolia properties was solely located in

Mississippi; and (5) the nature of the underlying suits against Magnolia's nursing homes giving rise to Hartford's duty to defend arose in Mississippi.

In any event, the question of whether Section 193 applies goes to the question of how much weight a court gives to the location of the risk. Even without using Section 193, the location of the risk is still a relevant factor in determining the choice of law regarding insurance contracts. *See* Restatement (Second) of Conflict of Laws § 188(d) (" the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: ... the location of the subject matter of the contract").

Having discussed the applicable law, the court now applies the center of gravity test to the facts at hand. Thus, the court must decide whether Louisiana or Mississippi "has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation." *Zurich*, 920 So.2d at 433. The answer this question, the court will consult the factors discussed in Sections 188, 193, and 6, respectively, of the Restatement (Second) of the Conflict of Laws.

With respect to the Section 188 factors, (a) the place of contracting was Louisiana; (b) the place of negotiation of the contract was Louisiana; (c) the place of performance was presumably in Louisiana and in any of the seven states, including Mississippi, in which properties were covered; (d) the location of the subject matter of the contract was spread among various properties in seven different states, with the Magnolia properties in Mississippi giving rise to the instant suit in Mississippi; and (e) the domicile, residence, and place of incorporation of the Hartford defendants

was neither Louisiana nor Mississippi, whereas the domicile, residence, and place of incorporation for Foundation is Louisiana while for Magnolia Health Care, Inc. is Mississippi.

Also according to Section 188, "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." The particular issue is whether Mississippi or Louisiana has the most significant relationship to the transaction between the Hartford defendants and Magnolia, a Mississippi corporation whose sole member is Foundation, a Louisiana corporation. In answering this question, the court must look to the principles of Sections 6 and 193.

With regard to Section 193, the rights created by the subject casualty insurance policy must be "determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties." It is undisputed that the Hartford defendants, through their corporate representative, and the plaintiffs understood that the location of the insured risk with regard to the Magnolia properties was Mississippi. This is true given that the only properties insured for Magnolia, a named insured, were located in Mississippi. The questions remain whether Mississippi can be said to be the location of the "principal" location of the insured risk and whether Louisiana or Mississippi has a more significant relationship under the principles stated in Section 6.

As discussed above, Comment b to Section 193 states that the location of the insured risk will not be given greater weight than any other single contact in determining the state of the applicable law where the policy covers a group of risks that are scattered throughout two or more states. This is not to say that the location of the insured risk carries no weight. In any event, the court observed

above that with regard to the Magnolia, the only location of risk for the Magnolia properties was Mississippi. In this court's opinion, the Comment b discussion concentrates on distinguishing location of risks that are immovable and fixed from those that are constantly changing. Just after the exception regarding "groups of risks that are scattered throughout two or more states," the remainder of that paragraph in Comment b states:

> The importance of the risk's principal location will also vary somewhat from case to case. It enjoys greatest significance when an immovable is involved, such as when the risk insured against is damage by fire to a particular building. In the case of chattels, the significance of the state of the risk's principal location diminishes with the length of time that it can be anticipated the chattel will be in other states during the term of the insurance. Provided, however, that the risk will be in a particular state for the major portion of the insurance period, the risk's principal location is the most important contact to be considered in the choice of the applicable law, at least as to most issues.

In other words, after reading Section 193 and the comments thereto as a whole, the court concludes that in situations where a policy covers immovable and fixed properties in multiple states and a certain named insured, among the other named insureds, only has covered properties in one particular state, the principal location of the risk with regard to that certain insured is in the only state in which it has covered properties.

As indicated above, the court concludes that location of the risk with regard to Magnolia was understood by all to be constantly in Mississippi since Magnolia, a named insured, only owned nursing homes in Mississippi. It is from the activities at these Mississippi nursing homes that gave rise to the lawsuits against them which, in turn, gave rise to the instant dispute over whether the insurer is subject to Mississippi law involving independent counsel in duty to defend with reservation of rights situations.

This leaves the question of whether Louisiana or Mississippi has a more significant relationship to the transaction and the parties under the principles stated in Section 6.

Regarding the Section 6 factors discussed above in determining conflict of law questions, the court finds that the first factor – the needs of the interstate and international systems – is inapplicable to this case. Consideration of the second, third, and fifth factors requires weighing the policies of Louisiana versus Mississippi with regard to the primary questions at hand – *i.e.*, (1) whether or not a conflict of interest is created when an insurer provides defense counsel to an insured while reserving its rights to deny coverage based on the information received by the defense counsel who is working for the insurer and the insured; if so, (2) whether the insurer must provide independent counsel to its insured; and (3) whether the parties' insurance transaction contemplated this question to be resolved by Louisiana or Mississippi law.

As to the last question, it is undisputed that there was no choice of law provision in the policy, nor is there evidence that anyone discussed it. Thus, the court is limited to the circumstances in divining what the parties reasonably understood would be the applicable law. For the reasons discussed earlier, the court concludes that with respect to Magnolia, it was reasonable to presume that Mississippi law would determine questions of liability arising out of the policies covering the Mississippi corporation's Mississippi properties, especially since Magnolia was a named insured and its only covered properties were in Mississippi.

As to the other two questions, Mississippi has already concluded in *Moeller* that there is in fact a professional conflict of interest when an insurer provides and shares defense counsel to an insured with a reservation of the right to not indemnify, thereby requiring the insurer to provide the

insured with independent counsel. Louisiana has apparently not reached the same conclusion. However, the Hartford defendants have pointed to no Louisiana law stating that there is no such conflict of interest. If an insurer provided a Louisiana law firm to defend an insured in a lawsuit filed in a Louisiana court, where the insurer reserved its right to deny indemnification, the insurer can share information with the same defense firm which can be used to determine the question of indemnification. Objectively speaking, this scenario would almost certainly create a conflict of interest in Louisiana or any other state. Thus, presumably, a Louisiana court would reach the same conclusion as did the Mississippi Supreme Court in *Moeller*.

Thus, the court concludes that the second, third, and fifth factors – *i.e.*, the relevant policies of the forum, the relevant policies of other interested states and the relevant interest of those states in the determination of a particular issue, and the basic policies underlying the particular field of law – weigh in favor of Mississippi law.

The next factor is the protection of justified expectations. As already discussed, it was a justified expectation for Magnolia to assume that Mississippi law would be used in determining whether or not they should receive independent counsel from their insurer in the underlying lawsuits filed against it. Furthermore, since there was no choice of law provision, it is reasonable to assume that the insurers expected the same result. Insurance companies are heavily experienced and sophisticated in these matters and if they wanted Louisiana law to apply with regard to each of the named insureds from the seven states covered in the subject policies, they no doubt would have done so. It is not a stretch to assume that the insurer in this case is advocating the use of Louisiana law for the sake of expediency since Mississippi law is clearly unfavorable to their current position.

The next factor to consider is the "certainty, predictability, and uniformity of results." Though it was reasonable for Magnolia to assume Mississippi law would apply in instances suits against them in Mississippi, the interests of certainty, predictability, and uniformity of results could have been better served if the parties had placed a choice of law provision in the subject policies.

Finally, the seventh factor under Section 6 is the "ease and determination in application of the law to be applied." There is no difficulty of applying Mississippi law to the question at hand. If Mississippi law is applied, the insurer certainly owes a duty to provide independent *Moeller* counsel. If Louisiana law is applied, however, the question is not so clear since there are no Louisiana authorities cited taking a clear position either way.

Having addressed the choice of law factors in Sections 188, 193, and 6 of the Restatement (Second) of the Conflict of Laws, the court must now place the resolution of those factors on the scales. While doing so, the court must keep in mind that the Mississippi Supreme Court has held that "the drafters intended the specific provisions of sections 188 and 193 to be guiding and the general provisions of section 6 to have secondary importance." *Zurich*, 920 So.2d at 433 (citing *Boardman*, 47 So.2d at 1042).

Although the first two factors of Section 188 go to the Hartford defendants, the rest lean toward the plaintiffs. This is especially true when the "contacts are ... evaluated according to their relative importance with respect to the particular issue" – *i.e.*, whether Mississippi law would govern questions arising from the insurer's agreement to defend the insureds with a reservation of rights. Section 193 also weighs in favor of the plaintiffs. The court has already explained why it thinks this section is applicable in this action. Even if the "local law of the state which the parties understood

was to be the principal location of the insured risk during the term of the policy" were not granted more weight than any other factor as discussed in Comment b to Section 193 because multiple states were involved, the court finds this factor, when combined with the others, to be decisive in the dispute at bar. This conclusion is buttressed by the Section 6 factors which also tip the scale in favor of Mississippi law.

For the reasons discussed above, the court concludes that Mississippi "has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation." *Zurich*, 920 So.2d at 433. Therefore, Mississippi law controls the question of whether the Hartford defendants owe the plaintiffs independent *Moeller* counsel. Accordingly, pursuant to *Moeller*, the Hartford defendants do in fact owe the plaintiffs that duty.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Defendants' Motion for Declaratory Judgment and for Partial Summary Judgment on Choice of Law [49-1] is **DENIED**;

(2) Plaintiffs' Motion for Partial Summary Judgment as to Choice of Law [55-1] is **GRANTED**; and

(3) The parties are instructed to contact the U.S. Magistrate Judge within 10 days of this order to obtain a new Case Management Order for the issues remaining.

**SO ORDERED** this the 17th day of November, A.D.2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE